**C.A. No. 21-10316**

D. Ct. No. CR-20-01859-TUC-JGZ

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHAWN CHRISTOPHER LYTE,

Defendant-Appellant.

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ARIZONA

-----------------------------------------------------------
**BRIEF OF APPELLEE**
-----------------------------------------------------------

GARY M. RESTAINO
United States Attorney
District of Arizona

CHRISTINA M. CABANILLAS
Deputy Appellate Chief

SHELLEY K.G. CLEMENS
Assistant U.S. Attorney
405 W. Congress, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Attorneys for Appellee

Date Electronically Filed: November 4, 2022

# I.  TABLE OF CONTENTS

Page

I.      TABLE OF CONTENTS ...................................................... i

II.     TABLE OF AUTHORITIES.............................................. ii

III.    STATEMENT OF JURISDICTION .............................................1

    A.      District Court Jurisdiction .....................................................1

    B.      Appellate Court Jurisdiction.................................................1

    C.      Timeliness of Appeal...........................................................1

    D.      Bail Status............................................................................1

IV.     ISSUES PRESENTED ...........................................................2

V.      STATEMENT OF THE CASE ...............................................3

    A.      Nature of the Case; Course of Proceedings...........................3

    B.      Statement of Facts ...............................................................3

VI.     SUMMARY OF ARGUMENTS ....................................................18

VII.    ARGUMENTS .................................................................................20

    A.      Where The Defendant, Who Was Homeless And Registered A
False Residential Address In Michigan, Traveled To Arizona For
Work, But Failed To Register As A Sex Offender In Arizona And
Failed To Update His Registration In Michigan, The District
Court Did Not Err, Plainly Or Otherwise, In Finding That The
Defendant Had Committed A Violation Of SORNA.........................20

    B.      The Defendant's Arguments Are Foreclosed By *United States v.
Richardson*, 754 F.3d 1143 (9th Cir. 2014), In Which This Court
Held That 18 U.S.C. § 2250 Does Not Place An Undue Burden
On The States. .......................................................................38

    C.      SORNA Is Not Unconstitutionally Vague As Applied To Transient
Offenders Like The Defendant..........................................................42

VIII.   CONCLUSION.............................................................................56

IX.     STATEMENT OF RELATED CASES........................................57

X.      CERTIFICATE OF COMPLIANCE .........................................58

i

## II.  **TABLE OF AUTHORITIES**

**CASES**

*Carr v. United States*,
   560 U.S. 438 (2010)................................................................. 24, 27, 49

*City of Chicago v. Morales*,
   527 U.S. 41 (1999)............................................................................ 54, 55

*City of Spokane v. Federal National Mortgage Association* ("*FNMA*"),
   775 F.3d 1113 (9th Cir. 2014) ..............................................................39

*In re Findley*,
   593 F.3d 1048 (9th Cir. 2010) ..............................................................40

*Kolender v. Lawson*,
   461 U.S. 352 (1983).................................................................................53

*Miranda v. Arizona*,
   384 U.S. 436 (1966).................................................................................10

*Murphy v. NCAA*,
   138 S.Ct. 1461 (2018).............................................................................39

*New York v. United States*,
   505 U.S. 144 (1992).................................................................................39

*Nichols v. United States*,
   578 U.S. 104 (2016)........................................................................ 22, 41

*Printz v. United States*,
   521 U.S. 898 (1997).................................................................................39

*Skilling v. United States*,
   561 U.S. 358 (2010).................................................................................43

*South Dakota v. Dole*,
   483 U.S. 203 (1987).................................................................................39

*United States v. Adams*,
　888 F.3d 1134 (10th Cir. 2018) ...........................................................28

*United States v. Alexander*,
　817 F.3d 1205 (10th Cir. 2016) ..................................................... 28, 30

*United States v. Bruffy*,
　466 F. App'x 239 (4th Cir. 2012) .......................................................45

*United States v. Cook*,
　970 F.3d 866 (7th Cir. 2020) ............................................................51

*United States v. Crum*,
　No. CR08-255RSL, 2008 WL 4542408 (W.D. Wash. October 8, 2008)............46

*United States v. Crowder*,
　656 F.3d 870 (9th Cir. 2011) ...................................................... 46, 52

*United States v. Dimitrov*,
　546 F.3d 409 (7th Cir. 2008) ............................................................55

*United States v. Door*,
　996 F.3d 606 (9th Cir. 2021) ...................................................... 20, 22

*United States v. Elk Shoulder*,
　738 F.3d 948 (9th Cir. 2013) ............................................................46

*United States v. Elkins*,
　683 F.3d 1039 (9th Cir. 2012) ..................................................... 42, 46

*United States v. Frison*,
　825 F.3d 437 (8th Cir. 2016) ............................................................43

*United States v. Harris*,
　705 F.3d 929 (9th Cir. 2013). ...................................................... 43, 51

*United States v. Hatcher*,
　560 F.3d 222 (4th Cir. 2009) ...................................................... 36, 37

*United States v. JDT*,
762 F.3d 984 (9th Cir. 2014). ........................................................................ 42, 53

*United States v. Johnson*,
979 F.3d 632 (9th Cir. 2020) ................................................................. 20, 21, 22

*United States v. Kebodeaux*,
570 U.S. 387 (2013)........................................................................................22

*United States v. Laney*,
881 F.3d 1100, 1106 (9th Cir. 2018) ..................................................................35

*United States v. Laursen*,
847 F.3d 1026 (9th Cir. 2017) ................................................................... 20, 38

*United States v. Lopez*,
998 F.3d 431 (9th Cir. 2021) ...........................................................................20

*United States v. Mabie*,
663 F.3d 322 (8th Cir. 2011) ...........................................................................43

*United States v. Magallon-Jimenez*,
219 F.3d 1109 (9th Cir. 2000) .........................................................................20

*United States v. Morrison*,
472 Fed. Appx. 829 (9th Cir. 2012)............................................................ 41, 50

*United States v. Murphy*,
664 F.3d at 801(10th Cir. 2011)............................................................... 29, 30

*United States v. Nat'l Dairy Products Corp.*,
372 U.S. 29 (1963)...........................................................................................44

*United States v. Ocegueda*,
564 F.2d 1363 (9th Cir. 1977) .........................................................................43

*United States v. Richardson*,
754 F.3d 1143 (9th Cir. 2014) ................................................................ passim

*United States v. Schales*,
546 F.3d 965 (9th Cir. 2008), ..................................................51

*United States v. Thompson*,
811 F.3d 717 (5th Cir. 2016) ............................................ 28, 30

*United States v. Tuan Ngoc Luong*,
965 F.3d 973 (9th Cir. 2020) ..............................................20

*United States v. Van Buren*,
599 F.3d 170 (2d Cir.2010)...................................................28

*United States v. Voice*,
622 F.3d 870 (8th Cir.2010) ................................................29

*United States v. Walker*,
552 F. App'x 646 (9th Cir. 2014) .......................................45

*United States v. Zhi Yong Guo*,
634 F.3d 1119 (9th Cir. 2011) ...........................................43

## <u>STATUTES</u>

18 U.S.C. § 2250 ...................................................... passim

18 U.S.C. § 2250(a) .................................................. passim

18 U.S.C. § 3231 ...........................................................1

18 U.S.C. § 3553(f)(1) ...................................................20

18 U.S.C. § 4241(d) ......................................................2

28 U.S.C. § 1291 ...........................................................1

34 U.S.C. § 20901 .......................................................22

34 U.S.C. § 20911 .................................................. 23, 24

v

34 U.S.C. § 20911(13) ............................................................. 45

34 U.S.C. § 20912 ..................................................................... 23

34 U.S.C. § 20912(b) ............................................................... 25

34 U.S.C. § 20913 ..................................................................... 24

34 U.S.C. § 20913(a) ...................................................... passim

34 U.S.C. § 20913(b) ............................................................... 25

34 U.S.C. § 20913(c) ...................................................... passim

34 U.S.C. § 20913(d) ............................................................... 24

34 U.S.C. § 20914(a)(3) ........................................................... 31

34 U.S.C. § 20914(a)(7) ........................................................... 32

34 U.S.C. § 20920 ..................................................................... 23

34 U.S.C. § 20921 ..................................................................... 23

34 U.S.C. § 20922 ............................................................... 23, 50

42 U.S.C. § 16901 ..................................................................... 22

## **RULES**

Fed. R. App. P. 4(b) ................................................................. 1

## **MISCELLANEOUS**

*Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification*,
   73 Fed. Reg.  38030-01 ................................................................................. passim

# III. STATEMENT OF JURISDICTION

## A. District Court Jurisdiction

The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 because the defendant-appellant, Shawn Christopher Lyte ("the defendant"), was charged with a federal crime.  (2-ER-195-196.)[1]

## B. Appellate Court Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 based on the entry of the final judgment by the district court on October 20, 2021.  (1-ER-2-7.)

## C. Timeliness of Appeal

Following the entry of the final judgment, the defendant filed a notice of appeal on October 28, 2021.  (3-ER-457.)  The notice was timely pursuant to Fed. R. App. P. 4(b).

## D. Bail Status

The defendant is currently out of custody.

---

[1] "CR" refers to the Clerk's Record, followed by the document number(s). "ER" refers to the Excerpts of Record, accompanied by the volume and page number(s).  "SER" refers to the Supplemental Excerpts of Record, accompanied by the volume and page number(s).

# IV.  ISSUES PRESENTED

A.     Where the defendant registered a false residential address on his sex offender registration in Michigan, and then travelled to Arizona for work, where he remained for 13 days and never notified either Michigan or Arizona that he was living and working in Arizona, did the district court err, plainly or otherwise, in finding the defendant guilty of failing to register as a sex offender.

B.     Whether the district court erred by following this Court's precedent in *United States v. Richardson*, 754 F.3d 1143, 1156 (9th Cir. 2014) and finding that 18 U.S.C. § 4241(d) does not violate the Tenth Amendment to the Constitution.

C.     Whether 18 U.S.C. § 2250(a) is unconstitutionally vague as applied to the defendant.

## V.  STATEMENT OF THE CASE

### A.    Nature of the Case; Course of Proceedings

On October 7, 2020, a Tucson federal grand jury charged the defendant with failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a).  (2-ER-195-196.)  The district court presided over a two-day bench trial and found the defendant guilty.  (CR 85-86; 1-ER-8-20.)  On October 19, 2021, the district court imposed a sentence of time served plus 14 days, followed by 90 months of supervised release, and a special assessment of $100.00.  (1-ER-2-7.)

### B.    Statement of Facts

#### 1.    Defendant's Sexual Offense Conviction

In 2016, the defendant was convicted of five counts of possession of a photograph, film or other representation that knowingly includes sexual conduct by child, in violation of Florida Statute § 827.071(5) and one count of using a computer system or network to solicit or obtain sex with a minor, in violation of Florida Statute § 847.0135(2).  (2-ER-49-72.)  The sentencing judge imposed a sentence of five years in the Florida Department of Corrections.  (*Id*.)  As his conviction qualified as a sex offense, the defendant was required to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA).  (2-ER-44.)

3

2.      The Defendant's Motion To Dismiss The Indictment

Prior to trial, the defendant sought dismissal of the indictment for lack of probable cause, claiming the indictment was insufficient because it did not allege a failure to comply with Arizona's sex-offender registration requirements. (2-ER-176-181.) The defendant claimed that Arizona's sex offender registration statute only required registration of non-residents who would be employed full or part-time in the state of Arizona for 14 consecutive days or for an aggregate period of more than thirty days in a calendar year. And, as the defendant had not arrived in Arizona until May 26, 2020, and was scheduled to depart on June 9, 2020, he was not in violation of the law of Arizona. (2-ER-178-179.) The defendant also asserted that he attempted to register with the Pima County Sheriff's Department on the date of his arrest, but was precluded from doing so. (2-ER-180.)

The government responded in opposition arguing that the provisions of Arizona's sex offender registration laws were irrelevant. (2-ER-169-175.) The defendant was charged with violating SORNA, which is a federal law violation. (2-ER-172-173.) Under SORNA, the defendant had 72 hours to update his registration once he was in the state of Arizona. (2-ER-173.)

Following an evidentiary hearing, the assigned magistrate issued a Report and Recommendation recommending that the district court deny the defendant's motion

4

to dismiss. (2-ER-27-38.)  The district court adopted the Report and Recommendation, and denied the defendant's motion.  (2-ER-21-26.)

3.  <u>The Evidence At Trial, Including Testimony, Exhibits, And Stipulations, Proved The Defendant Guilty Beyond A Reasonable Doubt.</u>

The defendant waived his right to a jury trial, and requested a bench trial before the district court.  Prior to trial, the parties stipulated to the following:

1. On April 13, 2016, the defendant, Shawn Christopher Lyte, was convicted in Broward County, Florida, of five counts of Possess Photograph, Film Or Other Representation That Knowingly Includes Sexual Conduct By Child in violation of F.S. 827.071(5), and one count of Using A Computer System Or Network To Solicit Or Obtain Sex With A Minor in violation of F.S. 847.0135(2), in case number 1416443. These are all third-degree felonies. The defendant, Shawn Christopher Lyte, was sentenced to five years in custody. These convictions are reflected in Exhibit 1.

2. On April 26, 2016, Shawn Christopher Lyte reviewed and signed the "Notice of Responsibilities as Required by Statute For Offenders Under the Care, Custody, or Control of the Department" which is Exhibit 2.

3. The defendant, Shawn Christopher Lyte, is a sex offender for purposes of the Sex Offender Registration and Notification Act (SORNA).

4. The defendant, Shawn Christopher Lyte, is required to register under SORNA.

5. The defendant, Shawn Christopher Lyte, registered as a sex offender in the state of Florida prior to his release from custody.  In March 2019, the defendant, Shawn Christopher Lyte, notified Florida that he was moving to Texas and provided an address of 2407 North Main Street Houston, Texas 77009.

6. In September 2019, the defendant, Shawn Christopher Lyte, listed 4911 King Richard's Row, Midland, Texas 79707, as his mailing address on his official passport application.

7. On December 29, 2019, the defendant, Shawn Christopher Lyte, was interviewed by Customs and Border Protection (CBP) after being refused entrance into Senegal, West Africa and returned to JFK airport.

8. The defendant Shawn Christopher Lyte, registered as a sex offender on January 13, 2020 in the state of Michigan in person. This registration is Exhibit 3. The defendant, Shawn Christopher Lyte, listed his address as 3391 3 Mile Rd NW, Grand Rapids, MI 49534.

9. The defendant, Shawn Christopher Lyte, was employed by EDR Pro Installers located at 3391 3 Mile Rd NW, Grand Rapids, MI 49534. There are no residences or other living quarters at EDR Pro Installers.

10. The defendant, Shawn Christopher Lyte, was required to travel as part of his employment. His timecard, Exhibit 4, is a true and accurate accounting of the times, dates and locations of his installation responsibilities.

11. The defendant, Shawn Christopher Lyte, was in Four Oakes, North Carolina from January 15, 2020 until March 25, 2020 as part of his employment with EDR Pro Installers.

12. The defendant, Shawn Christopher Lyte, did not notify Michigan of his travel to North Carolina from January 15, 2020 through March 25, 2020.

13. The defendant, Shawn Christopher Lyte, traveled to Fort Worth, Texas on April 10, 2020, arriving April 11, 2020. The defendant, Shawn Christopher Lyte, was in Fort Worth Texas through April 21, 2020 as part of his employment with EDR Pro Installers.

14. The defendant, Shawn Christopher Lyte, did not notify Michigan of his travel to Texas from April 10, 2020 through April 21, 2020.

15. The defendant, Shawn Christopher Lyte, traveled directly from Fort Worth, Texas to San Francisco, California.

6

16. The defendant, Shawn Christopher Lyte, was in San Francisco, California from April 22, 2020 through April 28, 2020 as part of his employment with EDR Pro Installers.

17. The defendant, Shawn Christopher Lyte, rented a hotel room at the La Quinta – Reid Park in Tucson, Arizona from May 17-19, 2020 and May 26-June 9, 2020 as reflected in Exhibit 5.

18. The defendant, Shawn Christopher Lyte, has registered as a sex offender in the states of Florida and Michigan. The defendant, Shawn Christopher Lyte, has not and did not register in Texas, North Carolina, California or Arizona.

19. The defendant, Shawn Christopher Lyte, was arrested by Deputy U.S. Marshal's on June 8, 2020. The defendant, Shawn Christopher Lyte, had a Samsung Galaxy A10e (TRACFONE WIRELESS INC) SM-A102U1, bearing IMEI number 358369106878454 and a Samsung J3 Orbit (TRACFONE WIRELESS INC) SM-S367VL(GP), bearing IMEI number 356905093343382 in his possession at the time of his arrest. These are exhibits 6 and 7, respectively.

20. Exhibits 1 – 7 are admissible for any purpose.

(2-ER-44-47.)

Lana Hadzajlic-King with the Michigan State Police testified as to the defendant's registration requirements for the state of Michigan. (3-ER-291-293.) Ms. Hadzajlic-King testified that Michigan sex offender registrants must report any changes to their residential or work address to the local enforcement agency that has jurisdiction over their residential address. (3-ER-292-293.) And that reporting must be done no more than 3 business days (or 72 hours) after the change occurs. (*Id.*) Offenders who work or travel out of state are to provide an address, township and city. (3-ER-293.) Offenders are notified that when they traveled to other states they

have to follow that state's requirements and have to check in with the local law enforcement agency in that state. (3-ER-292.) Offenders who leave the state for more than seven days are supposed to notify the state of Michigan. (3-ER-298.)

Ms. Hadzajlic-King spoke with the defendant by phone on February 10, 2020. (3-ER-291-292.) The defendant stated that he traveled for work, and was concerned he would not be back in the state of Michigan in the month of February to verify. (3-ER-292.) Ms. Hadzajlic-King made sure the defendant understood his requirements to report any travel as set forth above. (*Id*.)

U.S. Deputy Marshal Audra Bidegain is assigned to locate individuals who are required to register under SORNA, but fail to do so. (3-ER-313-314.) On June 8, 2020, Bidegain received information that the defendant had been detained by U.S. Customs officials on August 7, 2020, when he entered the United States from Mexico, and that he was a convicted sex offender who had last registered in Michigan. (3-ER-315.) Bidegain determined that the defendant had not registered as a sex offender in Arizona. (*Id*.)

Bidegain obtained the defendant's registration paperwork from Michigan. (*Id*.) The registration paperwork revealed he had provided his employer's address as his residential address. (3-ER-316.) The defendant also provided a singular phone number of 346-274-2239. (*Id*.) This phone number was assigned to the Samsung J3 Orbit phone found in the defendant's possession upon his arrest. (3-

ER-317.)  The phone number for Samsung Galaxy phone, which was also in the defendant's possession upon his arrest, was not included on his registration paperwork.  (*Id*.)

Michigan's registration paperwork included a section entitled "Explanation of Duties to Register as a Sex Offender," which provided the defendant notice of his registration requirements.  (2-ER-89-91.)  These included providing the address where he would reside, and if homeless, the name of the village, city or township where he would spend the majority of his time.  (2-ER-90.)  The defendant was also required to provide the name and address of any temporary lodging to be used when away from his residence for more than seven days.  (*Id.*)  The defendant was also required to register any telephone numbers registered to him or routinely used by him.  (*Id*.)  Michigan required the defendant to report any changes of address within three business days, as well as any new address if relocating to another state.  (*Id.*; 3-ER-317-318.)  The defendant signed the registration paperwork affirming that he had reviewed the paperwork, had been provided with a written notice explaining his registration duties, and that he understood said duties.  (2-ER-91; 3-ER-318.)

Bidegain also obtained the defendant's registration paperwork from Florida. (2-ER-82-83; 3-ER-319.)  Similar to Michigan's paperwork, it includes a series of responsibilities for any person required to register, and puts sex offender registrants

9

on notice of their registration requirements and the time frames in which they're required to register.  (3-ER-319-320.)

Upon confirming that the defendant was a convicted sex offender who was required to register under SORNA, Bidegain went to the La Quinta Hotel where the defendant was reportedly staying.  (3-ER-320.)  Bidegain made contact with the defendant around 5:00 pm that same day, and took him into custody.  (3-ER-324.) After advising the defendant of his *Miranda*[2] rights, Bidegain advised him that he had been arrested pursuant to a warrant.[3]  (2-SER-11-13.) The defendant then claimed he had gone to the sheriff's department that same day so there wouldn't be a warrant.  (2-SER-13.)

When asked, the defendant advised he decided to go to the local sheriff's department and register because he had received a call from a friend, Tina, advising him that a U.S. Marshal had visited her, and told her the defendant needed to register. (2-SER-13-14.)  The defendant claimed he tried to register, despite being told he had ten business days to do so.  (2-SER-14.)

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966)

[3] The government has moved to supplement the record with the certified copy of the transcript of the defendant's interview, which was marked as Exhibit 10C. The government has the CD of the interview, which was admitted as Exhibit 10B, that we will provide on request.

The defendant stated that he had arrived in Tucson on Tuesday, May 26, 2020, which was the same day he had rented the car, and that he had been in Arizona since then for his job. (2-SER-15.) The defendant agreed that his registration required him to register in the state where he was working, but he had failed to register within ten days. (2-SER-16.) The defendant conceded that the residential address he provided to the state of Michigan was not where he actually lived. (2-SER-17.) The defendant also conceded that when he registered authorities in Michigan advised him of a duty to register in the state where he was working. (2-SER-16, 26.)

Bidegain advised the defendant that under federal law he should have registered within three days, but that he was still overdue to register under the state requirement of ten days. (2-SER-18.) Despite claiming that the Tucson job had been "messed up" and was running long, the defendant asserted that he would have been leaving Tucson the next day on June 9, 2020. (2-SER-19-20.)

Bidegain testified as to the information found on the defendant's unregistered Samsung Galaxy phone. (3-ER-329-333.) Text messages found on that phone confirmed that Mr. Lyte had received a text message from a Tina Brown on the date of his arrest asking that he call her when he had "some private time. ASAP, please." (3-ER-331-332; 1-SER-2.) On May 29, 2020, the defendant used that same phone to text Brown and say, "Ok, ok . . . BTW, you can use this number. The other number will mainly be for work and judicial compliance." (3-ER-332; 1-SER-4.)

11

The defendant called Ms. Brown at 1:03 pm, approximately 17 minutes after receiving her text. (3-ER-335-336.) A search of the phone revealed that he then went online and researched out-of-state sex offender registration requirements for Arizona. (3-ER-336.) The phone evidence did not reveal any previous attempts by the defendant to educate himself as to Arizona's registration laws prior to June 8, 2020. (3-ER-336-337.) After calling the Pima County Sheriff's Department, the defendant then drove to their location. (3-ER-337.)

Additional text messages included one sent by the defendant on January 3, 2020, to a person identified as "Jeremy." The text message read, "In order to go back to the job, I have to become a Michigan resident, meaning I have to register in Michigan, too. Don't want to have to keep registering everywhere, especially for shit I did not do in the first place. But who cares about truth, facts, and justice, hmm?" (3-ER-338; 1-SER-6.)

As part of his employment with EDR, the defendant was required to travel. (2-ER-45.) The government introduced into evidence the defendant's timecards, which the defendant stipulated were a true and accurate accounting of the times, dates and locations of his installation responsibilities. (2-ER-45, 92-96; 3- ER-326.)

The time cards reflected that the defendant travelled to Four Oakes, North Carolina on January 15, 2020, and remained there until March 25, 2020. (2-ER-46, 92-94; 3-ER-329.) He never registered as a sex offender with the state of North

Carolina. Nor did he notify Michigan of his travel to North Carolina. (2-ER-46, 3-ER-328-329.)

The defendant travelled to Fort Worth, Texas for work on April 11, 2020, where he remained until April 21, 2020. (2-ER-46, 94-95; 3-ER-328.) He did not notify Michigan of his travel to Texas, nor did he register as a sex offender with the state of Texas. (2-ER-46; 3-ER-328-329.)

The defendant left Texas on April 22, 2020, and traveled directly to San Francisco, California, where he remained until April 28, 2020, as part of his employment with EDR. (2-ER-46, 95; 3-ER-328.) He then travelled to Fremont, California on May 11, 2020, where he worked until May 17, 2020. (2-ER-46, 95; 3-ER-328-29.) He did not register with the state of California as a sex offender; nor did he notify Michigan of his whereabouts. (2-ER-46; 3-ER-328-329.)

The defense called Aimee Jacobson-Mielnicki, a fingerprint technician with the Pima County Sheriff's Department. (3-ER-375-76.) Her duties include registering sex offenders and processing fingerprint cards. (3-ER-376.)

Jacobson-Mielnicki testified that registration occurs when an offender comes into the office. (*Id*.) At that time, the technician asks for certain information from the offender, which is input into Offender Watch. (*Id*.) The offender reviews and signs his registration form. (*Id*.) The registration is completed in accordance with the laws of the state of Arizona. (*Id*.) Arizona requires registration within 10

13

business days of arriving within the state. (3-ER-379.) If a person is homeless, Jacobson-Mielnicki will input the cross streets where the offender expects to be "camped out at" or where they "park their car." (3-ER-387.) If the homeless person changes addresses/location, he is required to update the registration within 72 hours. (3-ER-390.)

The registration office is open on weekdays from 8:00 am to 3:00 pm. (3-ER-377.) The length of time it will take to register someone depends on whether they are new to the state or simply updating a registration. (3-ER-377.) A new registration will take approximately 45 minutes to an hour, and the office policy is to not initiate new registrations after 2:00 pm. (3-ER-378.) If a person is unsure whether they need to register as a sex offender, then Jacobson-Mielnicki would consult with a compliance officer. (3-ER-388.)

Jacobson-Mielnicki testified that the defendant, who was a new registrant, came in close to closing time. (3-ER-378.) Jacobson-Mielnicki told him he would need to come back the next day to register. (*Id.*) The defendant claimed he was leaving town the next day, which was the last day he could be in Arizona without registration. (*Id.*) Jacobson-Mielnicki provided him with a phone number for a Detective Harn, a Tucson Police Department compliance detective, to see if Harn wanted the defendant to register or not. (3-ER-379.) If Harn determined that a

14

registration was not necessary, then the Sheriff's office would not do the registration. (*Id.*)

4. The District Court's Findings Of Fact And Conclusions Of Law.

The district court found the defendant guilty of failing to register as a sex offender. (1-ER-8-20.) The district court noted that the parties entered into stipulation of facts which established the first two elements of the offense – that the defendant was a sex offender who was required to register under SORNA and that the defendant traveled in interstate commerce from Michigan to Arizona in May 2020. (1-ER-10.)

The district court concluded that the government had proven beyond a reasonable doubt the third element of the offense – that the defendant knowingly failed to register or update a registration as required by SORNA. (1-ER-10, 14.) The district court found that the defendant knew of his obligations to register based on his review of Florida's Notice of Responsibilities as Required by Statute For Offenders Under the Care, Custody, and Control of the Department," and Michigan's Explanation of Duties to Register as a Sex Offender. (1-ER-11.) The court noted that the defendant complied or partially complied with his registration requirements in Florida and Michigan. (1-ER-14.) In addition, on February 20,

2020, the defendant had a phone conversation with Hadzaljlic-King wherein she informed him of his obligation to report changes to his residential or work address. (1-ER-14.) The district court also found that the defendant's belated attempts to register at the Pima County Sheriff's Department and his post-arrest admissions to Deputy Bidegain also demonstrated his knowledge of his duty to register. (*Id*.)

In addition, the district court found that the defendant "despite knowing of his obligation to register, chose not to do so." (1-ER-15.) Evidence supporting this finding included the defendant's January 3, 2020, text to Jeremy indicating he did "not want to have to keep registering everywhere." (*Id*.) And his May 29, 2020, text to Tina Jones telling her to contact him through a phone not registered or known to law enforcement. (*Id*.) In addition, the defendant made no effort to register in Arizona until advised by Tina Brown that the U.S. Marshals were looking for him. The district court also noted that the defendant had failed to register when he traveled to and resided in Michigan, North Carolina, Texas and California in 2020. (*Id.*)

The district court referenced SORNA's definition of resides, but found that the defendant had never registered his residential location in any registry. (1-ER-15.) In addition, while he had registered in Michigan in January 2020, he had not provided a real residential address. (*Id*.) Based on the evidence presented at trial, the district court concluded that in 2020, the defendant was homeless and transient due to his employment, and habitually living in the states where he was sent to work.

(*Id*.)  And that the defendant was working in and intended to live in Arizona in May and June of 2020.  (*Id*.)

Finally, the district court found without merit the constitutional defenses raised by the defendant.  Specifically, the district found that SORNA did not violate the Due Process Clause, or the Tenth Amendment; nor did it interfere with his fundamental right to travel.  (1-ER-16-20.)

In sum, the district court found the government had proven all the elements of the offense of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a), and found the defendant guilty of that offense.  (1-ER-20.)

On October 19, 2021, the district court imposed a sentence of time served plus fourteen days.  The court placed the defendant on supervised release for a period of 90 months.  (1-ER-2.)

## VI. **SUMMARY OF ARGUMENTS**

A.     The district court did not err in finding the defendant guilty of failing to register as a sex offender.  The evidence proved that the defendant was convicted of a sex offense that required him to register as a sex offender, that he travelled in interstate commerce and that he failed to register or update his registration as required by SORNA.  The defendant's reliance on SORNA's definition of "resides" and the SMART Guidelines definition of "habitually lives," is misplaced because the defendant provided a false residential address, had no fixed place of abode, and traveled to various states for his job, where he would stay in various hotels.  Thus, he was required to register within 72 hours of his arrival in Arizona, and to notify Michigan that he had left the state.  Even if the district court erred in finding the defendant was residing in Arizona, any error was harmless as the evidence proved that the defendant also violated SORNA by failing to register in the district where he worked and failing to notify Michigan that he was working in Arizona.  The evidence was more than sufficient for any rational trier of fact to find the government met its burden to prove the elements of the offense.

B.     In *United States v. Richardson*, 754 F.3d 1143 (9th Cir. 2014) this Court held that SORNA did not violate the Tenth Amendment's anti-commandeering principle, and did not place undue burden on the states.   SORNA does not force the states to adopt SORNA.  It merely creating a financial incentive for them to comply,

which this Court has found is constitutionally permissible. That the district court adopted SORNA's 72-hour requirement to register, as opposed to Arizona's more expansive deadlines places does not change this analysis, as whether the defendant violated SORNA is contingent on proving the defendant violated federal law, not state law.

C.     Section 2250(a) is not unconstitutionally vague as applied to the defendant. The defendant was on notice that as a convicted sex offender he was required to register in each state where he resided – regardless of whether that residence was permanent or temporary. The defendant had received notice of that duty to register a change of residence, even if he is homeless or transient by registration officials in Florida and Michigan. He also received notice of an obligation to register in each state where he was employed. The defendant was aware that his conduct - travelling to and living in and working in, Arizona for multiple days without notifying either Michigan or Arizona - was prohibited by statute. SORNA's enforcement of the provisions against him are clear and the statute, as applied to the defendant, did not result in an arbitrary and erratic arrest and conviction. The defendant therefore has not shown that Section 2250(a) is unconstitutionally vague as applied to the circumstances of his case.

# VII.  ARGUMENTS

**A.  Where The Defendant, Who Was Homeless And Registered A False Residential Address In Michigan, Traveled To Arizona For Work, But Failed To Register As A Sex Offender In Arizona And Failed To Update His Registration In Michigan, The District Court Did Not Err, Plainly Or Otherwise, In Finding That The Defendant Had Committed A Violation Of SORNA.**

### 1.  Standard of Review

Claims of insufficient evidence are generally reviewed de novo.  *See United States v. Tuan Ngoc Luong*, 965 F.3d 973, 980–81 (9th Cir. 2020).  There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Tuan Ngoc Luong*, 965 F.3d at 980–81.  The same test applies to both jury and bench trials.  *See United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000).

The district court's legal conclusions are reviewed de novo.  *See United States v. Laursen*, 847 F.3d 1026, 1031 (9th Cir. 2017) (conclusions of law following bench trial).  The district court's construction or interpretation of a statute is also reviewed de novo.  *See*, *e.g.*, *United States v. Lopez*, 998 F.3d 431, 434 (9th Cir. 2021) (reviewing de novo a district court's interpretation of 18 U.S.C. § 3553(f)(1)).

But, where a sufficiency challenge is actually a claim of trial error, and the claim is not preserved, review is for plain error.  *See United States v. Door*, 996 F.3d 606, 618 (9th Cir. 2021); *United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020)

20

(concluding that although defendant framed his argument as a challenge to the sufficiency of the evidence, it was better understood as a claim that district court applied the wrong legal standard to which defendant failed to object, subject to review for plain error). To establish plain error, the defendant must show that (1) there was an error, (2) the error is clear or obvious, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 979 F.3d at 636.

> 2. <u>The District Court Did Not Plainly Or Otherwise Err In Finding that The Defendant Had Violated SORNA.</u>
>
> > a. <u>The defendant did not preserve this argument in the district court, thus this Court should review this claim of legal error for plain error only.</u>

The district court issued its Findings of Facts and Conclusions of Law and Order finding the defendant guilty of failing to register as a sex offender on August 10, 2021. (1-ER-8-20.) The defendant did not file a motion for reconsideration. Nor did he object to the district court's factual findings or legal conclusions.

On appeal, the defendant now asserts that the district court erred in its definition of "resides," and erred in finding that the defendant "intended to reside in Arizona, and thus had to register in Arizona within 3 business days." (Op. Br. at 8.) The defendant did not preserve this claim for appeal. Thus this Court should review for plain error or a miscarriage of justice. No miscarriage of justice results where

the "correction of an unpreserved error would ultimately have no effect on the judgment." *Door*, 996 F.3d at 618 (quoting *Johnson*, 979 F.3d at 638).

      b.    Background of SORNA and the Adam Walsh Act

SORNA was enacted by Congress on July 27, 2006, to implement a comprehensive nationwide sex offender registry, and to encourage states to develop uniform standards for tracking and registering sex offenders. *See* 34 U.S.C. § 20901.[4] SORNA represents Congress's most recent effort to "protect the public from sex offenders and offenders against children." 34 U.S.C. § 20901. Congress enacted SORNA to "make more uniform what had remained 'a patchwork of federal and 50 individual state registration systems,' with 'loopholes and deficiencies' that had resulted in an estimated 100,000 sex offenders becoming 'missing' or 'lost.'" *Nichols v. United States*, 578 U.S. 104, 111-112 (2016) (quoting *United States v. Kebodeaux*, 570 U.S. 387, 399 (2013)). Rather than creating a separate federal registration system, SORNA requires sex offenders to register in existing registries maintained by the states.

To accomplish this purpose, SORNA takes a three-part approach. First, SORNA establishes a national program of sex offender registration, training, and

---

[4] SORNA was originally codified at 42 U.S.C. §§ 16901, et seq. SORNA is now found at 34 U.S.C. §§ 20901-20932.

operational assistance, including the establishment of a National Sex Offender Public website. 34 U.S.C. §§ 20920, 20921 and 20922.

Second, SORNA sets forth uniform standards for states in establishing and maintaining their sex offender registries, in tracking sex offenders within their own jurisdictions, and in setting minimum state punishments for failure to register. To this end, SORNA defines the term "sex offender," 34 U.S.C. § 20911; requires states to include all "sex offenders" on their own registration rolls, see 34 U.S.C. § 20912; details the information that the state must collect from sex offenders, *id*. § 20912(a); and establishes standards for prosecuting state law violations of the registration act, *id*. § 20913(e). *See also* 34 U.S.C. § 20920 (establishing standards for state sex offender websites).

Third, SORNA provides for criminal penalties, under the Adam Walsh Act, 18 U.S.C. § 2250, directed at individual sex offenders who travel in interstate or foreign commerce and fail to register as SORNA requires. Section 2250 provides, in pertinent part:

(a) . . . Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2) . . .(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

23

Shall be fined under this title or imprisoned not more than 10 years, or both.

There are three elements to the offense. First, the defendant must have been previously convicted of a qualifying sex offense as set forth in 34 U.S.C. § 20911. To meet the second element of § 2250(a), the government must prove that the defendant traveled in interstate or foreign commerce after the qualifying sex offense conviction and after the effective date of the statute, July 27, 2006. *See Carr v. United States*, 560 U.S. 438, 448 (2010) (holding that Section 2250(a) requires travel after SORNA's enactment).

The third element of § 2250(a) is that the defendant knowingly failed to register in accordance with SORNA requirements. The registration requirements and procedures are primarily set forth in 34 U.S.C. § 20913. Section 20913 (a) provides:

> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student....

Section 20913(c), entitled "Keeping the registration current" provides that:

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry....

Section 20913 also provides procedures for initial registration of sex offenders, *see* 34 U.S.C. §§ 20913(b) & (d); and requires states to enact a parallel state criminal penalty for failure to comply, *id*. § 20913(e).

As authorized by Congress, *see* 34 U.S.C. § 20912(b), the Attorney General issued the final Department of Justice's National Guidelines for Sex Offender Registration and Notification, on July 2, 2008. S*ee Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38030-01 (the "Guidelines"). The Guidelines were intended to provide guidance to states and other jurisdictions on the statute's application and to give "general principles for SORNA implementation." *Id*. at 38030. The Guidelines' preface further acknowledges that SORNA sets minimal national standards, "setting a floor not a ceiling for jurisdictions' sex offender registration and notification programs." 73 Fed. Reg. at 38032.[5]

---

[5] The most pertinent sections of the Guidelines, for purposes of the present appeal, provide as follows:

• Sex offenders who lack fixed abodes are required to provide a specific description of where they habitually live, e.g., information about a certain part of a city that is the sex offender's habitual locale. 73 Fed. Reg. at 38055-38056.

• Jurisdictions must require sex offenders to provide information about any place in which the sex offender is staying when away from his residence for seven or more days, including identifying the place and the period of time the sex offender is staying there. 73 Fed. Reg. at 38056.

• "Habitually lives" is "understood to include places in which the sex offender lives with some regularity," not just in terms of what he would choose to characterize as his home address for self-interested reasons. A sex offender habitually lives "in any place in which the sex offender resides for at least 30 days." The registration of a sex offender who enters a jurisdiction to reside may not be delayed until after he has lived in the jurisdiction for 30 days. Rather, a sex offender who enters a jurisdiction in order to make his home or habitually live in the jurisdiction must be required to register within three business days. 73 Fed. Reg. at 38062.

    • "A sex offender who is employed may not have a fixed place of employment—e.g., a long-haul trucker whose "workplace" is roads and highways throughout the country, or a self-employed handyman who works out of his home and does repair or home-improvement work at other people's homes. Knowing as far as possible where such a sex offender is in the course of employment serves the same public safety purposes as the corresponding information regarding a sex offender who is employed at a fixed location." 73 Fed. Reg. at 38062. "SORNA also requires sex offenders to register and keep the registration current in any jurisdiction in which the sex offender is an employee. Hence, a sex offender who resides in jurisdiction A and commutes to work in an adjacent jurisdiction B must register and keep the registration current in both jurisdictions—in jurisdiction A as a resident, and in jurisdiction B as an employee. SORNA § 111(12) defines "employee" for this purpose to include "an individual who is self-employed or works for any other entity, whether compensated or not." As with residence, the SORNA requirement to register in jurisdictions of employment is not limited to sex offenders who have fixed places of employment or definite employment addresses. For example, consider a person residing in jurisdiction A who works out of his home as a handyman, regularly doing repair or home-improvement work at other people's houses both in jurisdiction A and in an adjacent jurisdiction B. Since the sex offender works in both jurisdictions, he must register in jurisdiction B as well as jurisdiction A. 73 Fed. Reg. at 38062.

26

c.  The district court did not err, plainly or otherwise, in its finding that the defendant was guilty of failing to register as a sex offender.

The defendant is mistaken that the evidence was insufficient to find a violation of 18 U.S.C. § 2250(a), or that the district court legally erred. The three elements of a SORNA violation are straightforward. *Carr*, 560 U.S. at 441-34, 446. Essentially, "[o]nce a person becomes subject to SORNA's registration requirements ... that person can be convicted under § 2250 if he thereafter travels and then fails to register." *Id.* at 447.

The defendant does not dispute on appeal that he was a sex offender who was required to register under § 20913, that he traveled in interstate commerce after he was convicted and during the time alleged in the indictment, and that he neither updated his registration in Michigan nor registered in Arizona. Instead, citing the SORNA Guidelines, the defendant asserts that the district court erred in finding he was required to register in Arizona because he did not intend "for the La Quinta Hotel to become his residence. (Op. Br. at 8.) Nor did he "'habitually live[]' in Tucson, Arizona." (*Id.*)

In making his claim of error, the defendant ignores three things. First, that he had not properly registered in any state as the residential address he provided to Michigan was false. He provided his employer's address as his residential address, knowing full well that he was not actually residing there, and that he would spend

27

most of his time residing in other locations.[6]  Second, as the district court correctly found, and the defendant has consistently claimed, he was homeless.  (1-ER-15; 2-ER-166; Op. Br. at 7.)  He "habitually lived" where his employer sent him and remained there for varying lengths of time.  Third, that he was working in Arizona for which there is a separate duty to register.

> i.  The district court did not err in finding the defendant had an obligation to register in Arizona as he was not living at the address he registered as his residence, and was homeless.

As the district court found, '[t]he lack of a permanent residence does not relieve a sex offender of his registration obligations under SORNA."  (1-ER-15) (citing *United States v. Thompson*, 811 F.3d 717, 725 (5th Cir. 2016)).  A transient sex offender can habitually live "in any place in which he intends to live with some regularity, . . . even if the person has no home or fixed address or is homeless." *United States v. Adams*, 888 F.3d 1134, 1137 (10th Cir. 2018) (quoting jury instruction approved in *United States v. Alexander*, 817 F.3d 1205 (10th Cir. 2016)).

SORNA's language and legislative history make it "clear that a registrant must update his registration information if he alters his *residence* such that it no longer conforms to the information that he earlier provided to the registry." *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir.2010) (emphasis added).  When a

---

[6] The defendant stipulated he was not living at this address.  (2-ER-45.)

sex offender relocates to a new location he is required to update his registration information "even if the sex offender has not yet established a new residence." *Id*. In *United States v. Murphy*, the Tenth Circuit pointed out that SORNA "§ 20913(a) does not say that a sex offender must register in a jurisdiction only if he maintains an unchanging residence." 664 F.3d 798, 801 (10th Cir. 2011). Rather, the court noted that "[w]hen someone changes residence—whether by leaving his home, moving into a new dwelling, becoming homeless, or other means—he has a reporting obligation." *Id*.; *see also United States v. Voice*, 622 F.3d 870, 875 (8th Cir.2010) (rejecting "the suggestion that a savvy sex offender can move to a different city and avoid having to update his SORNA registration by sleeping in a different shelter or other location every night").

SORNA requires sex offenders to register where they live, where they work, and where they go to school so that law enforcement officers know where offenders are spending their time. If the defendant had updated his registration in Michigan, Michigan would have notified Arizona of defendant's presence in the state. The fact that the defendant had provided Michigan with an employment-related address did not abrogate any duty on his part to notify Michigan when he was spending the night elsewhere.[7]

---

[7] Claims that he was properly registered in Michigan (Op. Br. at 4) and that Michigan was aware that he had provided his work address as his residential address and was fine with it (3-ER-258), are not supported by the record. There was no

The defendant relies heavily on *Thompson*, 811 F.3d 729-730, and *Alexander*, 817 F.3d at 1214, to support his argument. (Op. Br. at 5 and 7.) In particular, he focuses upon the discussion in each case of the 30-day aspect of the term "resides" and "residence" to be found in regulations pertaining to SORNA (Op. Br. at 8), but that discussion is inapposite to the defendant's situation.

Both of those cases involved a situation where the defendant left a validly registered residential address, and then traveled to another location without registering. *Id. at* 1207 (registered as transient in California and travelled to New Mexico); *Thompson*, 811 F.3d at 721 (registered at an apartment in Corpus Christi, Texas and travelled to McKinney, Texas).

In contrast, the defendant never registered a valid residential address in Michigan and had no "residence" in Michigan. When he left Michigan and traveled to Arizona he remained homeless and transient, but he neither updated his registry in Michigan, nor registered in Arizona within the required 72 hours. He violated § 2250. "When someone changes residences -- whether by leaving his home, moving into a new dwelling, becoming homeless, or other means -- he has a reporting obligation. *Murphy*, 664 F.3d at 801. And "even though SORNA grants a

---

testimony at trial from a Michigan official to support this assertion and the defendant did not testify at his bench trial. And while he did make this claim at the evidentiary hearing on his motion to dismiss (3-ER-258), the defendant provided no evidence to corroborate what amounts to self-serving hearsay. Nor was his testimony incorporated into the trial record before the district court.

30

three-day grace period, the obligation to update a registration attaches to the sex offender as soon as a change in status occurs." *Id*. at 803.

Other sections of the Guidelines more appropriately address the residential registration requirements of homeless/transient sex offenders.

> Sex offenders who lack fixed abodes are nevertheless required to register in the jurisdictions in which they reside .... [A] sex offender must register ... [i]n any jurisdiction in which he habitually lives (even if he has no home or fixed address in the jurisdiction, or no home anywhere).

73 Fed. Reg. at 38055. The Guidelines also explain the meaning of "habitually lives":

> "Habitually lives" accordingly should be understood to include places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons.

73 Fed. Reg. at 38062. More specifically, the Guidelines explain the meaning of "habitually lives" in the context of transient offenders:

> Such sex offenders cannot provide the residence address [as required by 34 U.S.C. § 20914(a)(3)] because they have no definite "address" at which they live. Nevertheless, some more or less specific description should normally be obtainable concerning the place or places where such a sex offender habitually lives — e.g., information about a certain part of a city that is the sex offender's habitual locale, a park or spot on the street (or a number of such places) where the sex offender stations himself during the day or sleeps at night, shelters among which the sex offender circulates, or places in public buildings, restaurants, libraries, or other establishments that the sex offender frequents. Having this type of location information serves the same public safety purposes as knowing the whereabouts of sex offenders

31

with definite residence addresses. Hence, the authority under [34 U.S.C. § 20914(a)(7) is exercised to require that information be obtained about where sex offenders who lack fixed abodes habitually live with whatever definiteness is possible under the circumstances. Likewise, in relation to sex offenders who lack a residence address for any other reason — e.g., a sex offender who lives in a house in a rural or tribal area that has no street address — the registry must include information that identifies where the individual has his or her home or habitually lives.

...

[A] sex offender may be homeless, living on the street or moving from shelter to shelter, or a sex offender may live in something that itself moves from place to place, such as a mobile home, trailer, or houseboat. SORNA ... accordingly defines "resides" to mean "the location of the individual's home or other place where the individual habitually lives."

*Id*. at 38055–56, 38061.

Part VI of the Guidelines reiterates the public safety concern expressed in Part VIII -- registration is necessary for officials to know "the whereabouts of sex offenders," whether they have fixed addresses or not. 73 Fed. Reg. at 38056. In this case, the defendant undercut public safety by first – not providing a correct residential address; and second – by not updating his location when he traveled to other states for work.

The Guidelines recognize in Part X.A that homeless sex offenders present "special difficulties" and that the information in the registry may be "in more general terms." 73 Fed. Reg. at 38065-66. But nothing in any part of the guidelines suggests that a move from Michigan to Arizona where he would stay in a hotel for several

days would not trigger the need for the defendant to report his change of circumstances.

That the defendant knew of this duty, but ignored it, is demonstrated by the record. Upon registering in Florida and Michigan, the defendant was advised that he was to provide his residential address, and if homeless, the area where he could be found. (2-ER-82, 90.) Instead, he provided Michigan with a false residential address. (2-ER-45, 88; 3-ER-316.) In addition, he did not update his registration to reflect that he would be away from his residence for seven days or more as required by Michigan's registration requirements, or that he would be working in the state of Arizona. Ms. Hadzajlic-King reminded the defendant of this requirement in a phone conversation on February 10, 2020. (3-ER-292-293.) That he understood this obligation, but was intentionally ignoring it, is also demonstrated by his text message to Jeremy, wherein he stated a desire to avoid registering "everywhere." (3-ER-338.) And in his text messages with Tina Brown stating that she should only contact him on the Samsung J3 Orbit phone number because the other phone was for work and compliance. (3-ER-333.)

Under SORNA's definition of resides, the defendant must register "[i]n any jurisdiction in which he has his home; and [i]n any jurisdiction in which he habitually lives (even if he has no home or fixed address in the jurisdiction, or no home anywhere)." 73 Fed. Reg. at 38061. The Guidelines also reiterate that "a sex

offender who enters a jurisdiction in order to make his home or habitually live in the jurisdiction must ... register within three business days." *Id*. at 38062. In this case, the defendant did not have an actual residence or other physical address in Michigan where he sometimes stayed. Thus, he made his home wherever his employer sent him. His intent was to remain as long as the job lasted or his employer kept him at that location. The fact that the defendant moved from state to state for his job, living out of hotels, did not relieve him of his responsibility to register each time he traveled in interstate commerce to a new location. And to find the defendant was not required to register where he was residing, which would have been his sole "home" or "residence," regardless of whether he intended to move to Arizona permanently, would circumvent the purpose of SORNA to track sex offenders from one jurisdiction to another.

The defendant's conduct constituted a change in his residence information such that it no longer conformed to the information he earlier provided to the registry – which was false from the day the defendant signed the registration. And, as reflected on his time cards, he spent more time living outside of Michigan than in it. Accordingly, beginning three days after the defendant arrived in Arizona, neither Michigan, Arizona, or any other jurisdiction had accurate information concerning the defendant's whereabouts, and the defendant took no steps to remedy this noncompliant situation. The district court did not err, much less plainly err, in

finding that the defendant was required to register in the state of Arizona within three business following his arrival as his home and where he was habitually living was in Arizona at that time.

> ii. The district court did not err in finding the defendant guilty of violating SORNA because the evidence demonstrate he also violated SORNA by failing to register where he was employed.

Even if this Court were to find that the district court erred in finding the defendant "resided" in Arizona for the purposes of SORNA, any error was harmless because the evidence was sufficient to find the defendant guilty of violating SORNA on an alternative ground. This Court may affirm the district court on any basis fairly supported by the record. *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018) ("For a challenge to the sufficiency of the evidence following a bench trial, [this Court] review[s] whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

In this case, the government also proved beyond a reasonable doubt that the defendant violated SORNA due to his failure to update his employment address. In addition to the requirement that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides," a sex offender must also keep his registration current "*where the offender is an employee*." 34 U.S.C. § 20913(a) (emphasis added). A sex offender must "appear in person" in at

least one of the applicable jurisdictions "not later than 3 business days after each change of name, residence, employment, or student status ... and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 34 U.S.C. § 20913(c).

Essentially, as part of his registration requirements, the defendant was required to provide his employer's name and work address. As advised in Michigan's Explanation of Duties, the defendant was also advised that if his "employment location is not in a fixed location, then [he] must provide the general areas where [he] work[ed] and the normal travel routes that [he] take[s] while working." (2-ER-90.)

Similar provisions are included in SORNA's Guidelines. Sex offenders are required to register and keep their registration current in any jurisdiction in which the sex offender is an employee. *See United States v. Hatcher*, 560 F.3d 222, 225 (4th Cir. 2009) (citing 34 U.S.C. § 20913(a) ("As a general matter, sex offenders must register and keep their registration current in each jurisdiction where they reside, work, or attend school.") The registration requirement is not limited to those with fixed places of employment or definite employment addresses. 73 Fed. Reg. at 38056 ("Knowing as far as possible where such a sex offender is in the course of employment serves the same public safety purposes as the corresponding information regarding a sex offender who is employed at a fixed location.") The

SORNA guidelines advise that if a person lives in one jurisdiction and commutes to another jurisdiction for work, the offender is required to register in both places. (73 Fed. Reg. at 38062. In addition, where an employee works in multiple jurisdictions, including ones in a different location than his home address, the offender must register in multiple places. *Id*. "Following the initial registration, sex offenders must keep their registration current by notifying at least one jurisdiction where they are required to register of all changes of name, residence, employment, or student status within three days of the change." *Hatcher*, 560 F.3d at 225. (citing 34 U.S.C. § 20913(c)).

The defendant was employed by EDR, and they are headquartered in Michigan at the address listed on his registration form. However, due to the nature of his work, the defendant was required to travel for his job. (2-ER-45.) For instance, between January 1, 2020, and June 9, 2020, he was in North Carolina for two months, then Texas, then California, and finally Arizona. (2-ER-92-95.) The defendant rarely "worked" at the Michigan location.

Despite having written notice[8] of an obligation to register in any location where his work took him, he never did so – not in North Carolina, Texas, California

---

[8] Hadzajlik-King also advised the defendant during the February 10th phone call, that he had to report any changes to his work address, in person, to the local enforcement agent with jurisdiction over his residential address within three days of any change. Hadzajlik-King also testified that sex offenders are required to report

or Arizona.  Nor did he notify Michigan that he had left the state and working in another jurisdiction.  As the district court correctly found, the defendant "habitually lived in the states where he went to work."  (1-ER-15.)  Thus, "under 34 U.S.C. § 20913, Lyte was required to register in Arizona within three business days of his arrival," but he failed to do so.  (*Id.*)  Therefore, the defendant violated SORNA, and there was overwhelming evidence on which any rational trier of fact could have found him guilty beyond a reasonable doubt.

**B.   The Defendant's Arguments Are Foreclosed By *United States v. Richardson*, 754 F.3d 1143 (9th Cir. 2014), In Which This Court Held That 18 U.S.C. § 2250 Does Not Place An Undue Burden On The States.**

1.   Standard of Review

The constitutionality of a statute, and its construction or interpretation, are questions of law reviewed de novo.  *See Laursen*, 847 F.3d at 1031.

2.   Argument

The defendant asserts that by interpreting SORNA to require registration within 72 hours of a change of residence, instead of Arizona's more permissive expansive definitions of reside, which allow a sex offender to be in Arizona without registration for up to 10 days if on vacation and up to 14 days for work related contexts, the district court "has created an extensive and unnecessary burden on state

---

their travel and change in work both in Michigan and the state they are traveling to if they are out of state more than seven days.  (3-ER-292, 298.)

registration offices." (Op. Br. at 8-9.) In essence, the defendant is arguing that SORNA violates the Tenth Amendment anti-commandeering principle. *Richardson*, 754 F.3d at 1146.

The Tenth Amendment provides that, "powers not delegated to the United States by the Constitution, not prohibited by it to the States, are reserved to the States respectively, or to the people." The Tenth Amendment prohibits federal officials from commandeering officials to administer and enforce a federal regulatory program. *Printz v. United States*, 521 U.S. 898, 935 (1997); *Murphy v. NCAA*, 138 S.Ct. 1461, 1475 (2018) (Tenth Amendment embodies an "anticommandeering doctrine" which "withhold[s] from Congress the power to issue orders directly to the States."). However, Congress can provide an incentive for state compliance by conditioning federal grants to states upon fulfillment of federal statutory or administrative directives. *New York v. United States*, 505 U.S. 144, 171-173 (1992); *see also South Dakota v. Dole*, 483 U.S. 203, 211 (1987) (upholding federal statute conditioning states' receipt of portion of federal highway funds on adoption of minimum drinking age of 21.) This is so even where the statute has an impact on a state. *See City of Spokane v. Federal National Mortgage Association* ("*FNMA*"), 775 F.3d 1113 (9th Cir. 2014) (statute exempting the FNMA from all state and local taxation other than taxes on real property, did not impose a new affirmative duty on

municipalities and therefore did not constitute commandeering even though clerks were required to record deed free of charge).

*Richardson*, 754 F.3d at 1146, forecloses the defendant's argument. This Court is bound by that decision because no en banc decision, Supreme Court decision, or legislation overrules that decision. *See In re Findley*, 593 F.3d 1048, 1050 (9th Cir. 2010). The defense cites no intervening cases that hold § 2250 violates the Tenth Amendment or is otherwise unduly burdensome on the states.

In *Richardson*, the defendant raised several constitutional challenges to 18 U.S.C. § 2250, including a claim that this statute violates the Tenth Amendment's anti-commandeering principle. *Richardson*, 754 F.3d at 1144, 1146. Richardson argued that "SORNA unlawfully forces states and state officials to create sex offender registries that meet federal standards and to comply with SORNA's many other complex and onerous requirements." *Id*. at 1146.

This Court rejected this argument and found that SORNA does not violate the Tenth Amendment. *Id*. In so doing, the *Richardson* panel noted that Congress made the receipt of federal funds by the states conditioned upon their implementation of SORNA'S provisions. However, the Court found that this condition did "not compel states or state officials to comply with its requirements; rather, Congress engaged in a constitutionally valid exercise of its spending power by conditioning the receipt of certain federal funds on the implementation of SORNA." (*Id*.)

40

*Nichols v. United States*, 578 U.S. 104 (2016), does not support the defendant's position. In *Nichols*, the Supreme Court addressed the issue of whether a sex offender who was registered in Kansas could be prosecuted under SORNA after he left the state and moved to the Philippines without updating his registration in Kansas. The Supreme Court held that SORNA did not require the defendant to update his registration in Kansas because once he moved Kansas was no longer his residence, and the Philippines is a foreign country. Thus, neither location was a "jurisdiction involved" under 34 U.S.C. § 20913(a). *Nichols* did not address any arguments that SORNA violated the Tenth Amendment or imposed an undue burden on the states.[9]

That the district court relied upon SORNA's three-day registration requirement, as opposed to Arizona's more permissive registration requirements, does not change this analysis. State law does not control the federal violation. *See United States v. Morrison*, 472 Fed. Appx. 829, fn1 (9th Cir. 2012) (noting that Morrison was convicted for failing to register under SORNA, a federal statute, and that the Montana Code has a separate provision requiring transients to register.) An individual can be in violation of an individual state requirement, the federal requirement or both. The defendant's federal duty to register is not dependent on

___

[9] Furthermore, Congress has since amended 18 U.S.C. § 2250 to add a foreign travel notification provision in order to address the Supreme Court's concerns.

whether he has a duty under state law to register. Instead, his federal duty to register is triggered because he meets SORNA'S statutory definition of "sex offender," and is independent of Arizona's sex offender registration requirements. *United States v. Elkins*, 683 F.3d 1039, 1046 (9th Cir. 2012).

**C. SORNA Is Not Unconstitutionally Vague As Applied To Transient Offenders Like The Defendant.**

1. Standard of Review

This Court reviews de novo a defendant's challenge that a statute is unconstitutionally vague. *United States v. JDT*, 762 F.3d 984, 996 (9th Cir. 2014).

2. The defendant's as-applied constitutional vagueness challenge lacks merit.

Despite conceding that SORNA "has survived vagueness challenges" (Op. Br. at 14), the defendant contends that SORNA is void for vagueness because he was subject to arbitrary and misleading enforcement by various state and federal agencies. (*Id.*) He makes this claims despite conceding "[h]e was told he was allowed to travel work and had to register under State rules and regulation," but appears to argue that the statute is vague because he was still subject to a three-day business federal requirement. (*Id.*) But the language of SORNA is very clear, even for someone with a transient lifestyle such as the defendant.

"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is

proscribed." *United States v. Frison*, 825 F.3d 437, 443 (8th Cir. 2016) (quoting *United States v. Mabie*, 663 F.3d 322, 333 (8th Cir. 2011)). In a facial challenge, this Court determines whether a statue is unconstitutionally vague by evaluating "whether the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice with respect to what the statute and regulations forbid, and whether the statute and regulations read together adequately provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme." *Zhi Yong Guo*, 634 F.3d at 1122–23.

Where, as here, the challenged law does not involve First Amendment rights, vagueness is evaluated on an as-applied basis and "must be examined in the light of the facts of the case at hand." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). To prevail, the defendant must demonstrate that the provision "is impermissibly vague in the circumstances of this case." *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977). The inquiry is specific to the individual defendant and "turns on whether the statute provided adequate notice to him that *his particular conduct* was proscribed." *Harris*, 705 F.3d at 932. (emphasis added). A defendant urging the invalidation of a federal statute on vagueness grounds must overcome "the strong presumptive validity that attaches to an Act of Congress." *Skilling v. United States*, 561 U.S. 358, 403 (2010) (quoting *United States v. Nat'l*

43

*Dairy Products Corp.*, 372 U.S. 29, 32 (1963)). The defendant fails to do so in this case.

Here, the defendant's conduct – travelling to Arizona for work and remaining here for 13 days, instead of at the false residential address he provided to Michigan authorities, and failing to update that information in Michigan or registering in Arizona – is proscribed by SORNA's unambiguous language and the defendant had ample notice that his conduct was prohibited by SORNA. Furthermore, SORNA's unambiguous language provides ample guidance to law enforcement on what constitutes a violation of § 2250(a), and sets forth specific standards preventing arbitrary enforcement.

        a.    <u>SORNA unambiguously mandates that a sex offender shall keep his registration current in each jurisdiction where he makes his home or habitually lives.</u>

SORNA requires that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, and where he is employed ..." 34 U.S.C. §20913(a). SORNA further requires that "[a] sex offender shall, not later than three business days after each change of... residence, employment, ... appear in person in at least one jurisdiction ..." where the offender resides, is an employee, or is a student, "and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 34 U.S.C. § 20913(c). SORNA defines the term "resides" as "the location of the individual's

home or other place where he habitually lives." 34 U.S.C. § 20911(13).  The meaning of the term "resides" is sufficiently precise, and provides adequate notice to a person of ordinary intelligence of the conduct that Congress has prohibited.   Where federal jurisdiction exists, it is a federal criminal offense to knowingly fail to register or update a registration as required by SORNA. 18 U.S.C. § 2250(a).

The multiple provisions in SORNA identifying, as a matter of federal law, who must register, how often, where, and the punishment for failing to do so, do not render the statute unconstitutionally vague.  S*ee United States v. Walker*, 552 F. App'x 646, 648 (9th Cir. 2014) (rejecting vagueness challenge to SORNA); *United States v. Bruffy*, 466 F. App'x 239, 244 (4th Cir. 2012) (same). The defendant does not argue otherwise and concedes that SORNA's provisions have survived facial vagueness challenges.  (Op. Br. at 14.)

Instead, the defendant argues that, as SORNA was applied to him, he was "prevented from knowing that his 'contemplated conduct [was] forbidden by statute.'" (Op. Br. at 14.)   The relevant facts demonstrate that the defendant cannot succeed on any of his as-applied vagueness claims.

To the extent the defendant is arguing that he did not have notice of a federal obligation to register pursuant to SORNA, the defendant's argument fails.  As noted by the district court, in order to prove a violation of § 2250 the government was not required to prove the defendant had actual notice of SORNA'S three-day

45

requirement. (1-ER-16.) Instead, the government was only required to prove the defendant had notice of a duty to register. A "SORNA defendant's knowledge of his failure to 'register or update a registration' as required by state law is sufficient to satisfy the 'notice' requirement of the Due Process Clause." *United States v. Elk Shoulder*, 738 F.3d 948, 955 (9th Cir. 2013) (quoting *Elkins*, 683 F.3d at 1049-50; *see also United States v. Crowder*, 656 F.3d 870, 876 (9th Cir. 2011) ("a convicted sex offender who knowingly fails to register would ordinarily be committing a crime regardless of whether that individual knows such failure also violates SORNA."); The defendant's "knowledge of state law registration requirements was enough to put him on inquiry notice of the corresponding federal law. Due process requires no more." *United States v. Crum*, No. CR08-255RSL, 2008 WL 4542408, at *4 (W.D. Wash. October 8, 2008).

The stipulated facts concerning the defendant's knowledge of his duty to register also undermines his vagueness argument. The defendant stipulated: (1) that he was a sex offender for purposes of SORNA; (2) that he registered as a sex offender in the state of Florida and was provided a "Notice of Responsibilities" outlining his obligations to register under Florida law; (3) that he updated his Florida registration notifying them of his intent to move to Texas prior to doing so; and (4)

that he registered as a sex offender in January 2020 in the state of Michigan.[10]  (2-ER-44-47.)

Furthermore, the record demonstrates that the defendant had ample notice of his duty to register as a sex offender, even when he did not have a permanent residence.  In April 2016, the defendant signed a Notice of Responsibilities as Required by Statute which set forth his registration requirements from the state of Florida.  The Notice provided separate definitions for "permanent" "temporary" and "transient" residences, but each set forth a deadline to register if he was going to be in any of these types of residences for more than 5 days.  (2-ER-82.)   The Notice also advised the defendant that if he vacated his permanent, temporary, or transient residence, he must report in person to the sheriff's office in the county where he was located within 48 hours.  (*Id.*)   In addition, if intending to establish a permanent, temporary or transient residence outside of Florida, the defendant was required to report in person to the sheriff's office in the county of his current residence within 48 hours before the date he intended to leave the state. (*Id.*)

In January 2020, the defendant registered as a sex offender in the state of Michigan and acknowledged receipt of his "Explanation of Duties to Register as a

---

[10]  As part of the registration paperwork, the defendant received an explanation of his duties to register as a sex offender, which a signed acknowledgement he had received them, that he had read them, and that he understood his registration duties. (ER-89-91.)

47

Sex Offender." (2-ER-89-91.) Under Michigan law he was advised that upon registering he had to provide the address where he resides or will reside, and that if he was homeless, he had to provide the name of the village, city or township where he would spend the majority of his time. (2-ER-90.)

Similar to SORNA's requirements, he was also advised that he was required to report in person within three (3) business days any new address, or if homeless or lacking a fixed or temporary residence he was to provide the village, city, or township where he would spend the majority of his time. (*Id*.) He was also required to report within three days any "temporary address and dates of travel if he intended to temporarily reside at any place other than his residence for more than seven days, as well as any new address prior to changing his residence to another state. (*Id*.)

Any uncertainty about when he was required to register and report changes under SORNA are contradicted by the fact that the state of Michigan's requirements are very similar to SORNA's. Had the defendant complied with Michigan's requirements, he would have been in compliance with SORNA. That he relocated to and temporarily resided in multiple states for extended periods of time after he signed Michigan's registration without notifying registration authorities demonstrates his intentional non-compliance, and negates claims of confusion. The defendant cannot credibly claim that he was not on fair notice that failing to provide to any jurisdiction for 13 days accurate information regarding his whereabouts

48

violated SORNA, when he had been specifically informed that he was required to provide information about any change of residence or address of employment within three days when he was going to be in a new location for seven days or more.  (*Id.*)

The defendant was reminded of these obligations on February 10, 2020, when he  spoke with Ms. Hadzajlic-King with the Michigan State Police Department's sex offender registry unit.  Hadzajlic-King reminded the defendant of his requirements in Michigan as far as reporting any travel.  (3-ER-292.)  She advised the defendant that he was required to report any changes to his residential or work address in person with a local enforcement agent with jurisdiction over his residential address within three business days after the change occurs.  In addition, he was required to report his travel and change of work both in Michigan and the state he was traveling to if he was to be out of state more than seven days.  (3-ER-292-293.)  The defendant had clear, unambiguous notice of his registration obligations that any reasonable person could understand.

The defendant's arguments that there is no consistent framework at the Federal level for determining the status of a sex offender's registration, or that there is no federal authority to register sex offenders outside of the states' frameworks (Op. Br. at 12),  are unavailing and irrelevant to his claims of vagueness.  While "federal sex-offender registration laws have from their inception, expressly relied on state level enforcement," *see Carr*, 560 U.S. 452, SORNA provides a standardized

49

national system.  And there is a national sex offender registry website that maintains public data of all sex offender registrants throughout the United States.  (3-ER-303.); *see also* 34 U.S.C. § 20922;   When an offender registers with the local jurisdiction, that jurisdiction enters the information into Offender Watch, which allows both state and federal officials to check and see if someone is registered.  (3-ER-303.)   And while states each maintain their own systems and are permitted to supplement SORNA's requirements with their own specific registration requirements, this does not affect SORNA's requirements. *See Morrison*, 472 F. App'x. at 829, fn 1 (noting that Morrison was convicted for failing to register under SORNA, a federal statute, and that the Montana Code has a separate provision requiring transients to register.)

That the definition of "business" days is questionable as state and federal holidays can be different (Op. Br. at 12-13), is also irrelevant to the defendant's as-applied challenge.[11]  Neither the state of Arizona, nor the Federal government, celebrated a holiday between May 26, 2020 and June 8, 2020.[12]  If a statute undoubtedly proscribes a defendant's conduct, "he will not be heard to argue that the

---

[11] The defendant's reliance on the definition of "business day" in an unrelated regulation ("Regulations Pertaining To Certain Transactions by Foreign Persons involving Real Estate in the United States") is misplaced.

[12] https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Historical-Data; https://leaveboard.com/public-holidays/united-states-arizona-public-holidays-2020/.

statute is vague as to one or more hypothetical scenarios." *United States v. Cook*, 970 F.3d 866, 873 (7th Cir. 2020).

Thus, while the defendant invokes "[f]anciful hypotheticals," *United States v. Schales*, 546 F.3d 965, 973 (9th Cir. 2008), which he claims prevented him from knowing his conduct was forbidden by statute, there is no dispute that the defendant was on notice that "his particular conduct was proscribed" by Section 2250(a). *Harris*, 705 F.3d at 932. He therefore has not shown that Section 2250(a) is unconstitutionally vague as applied to the circumstances of his case.

To the extent the defendant is asserting that he was confused by Arizona's more lenient reporting requirements for vacationing or those temporarily employed in the state, this argument is also irrelevant and contradicted by the record. The defendant had notice from the State of Michigan of a need to update his registration within three business days if he was travelling to another state and would be there more than seven days. (2-ER-90.) He traveled to Arizona for work, and remained there for 13 days, yet failed to notify either Michigan or Arizona of his change of address until he was notified by a friend that the U.S. Marshals were looking for him. (2-ER-46; 3-ER-336.) Only then did he research Arizona's registration requirements. (3-ER-336.) Arizona's more lenient provisions did not lead him to believe he could wait until day 14 to register in Arizona as he was not aware of Arizona's registration requirements until he was already in violation of both SORNA

and Michigan's registration requirements. The defendant's challenges as to his notice of § 2250's requirements fails.

Thus, even though his stay in Arizona was temporary, the defendant had fair warning that, within three business days at most, he had an obligation to update his Michigan registration that he would be living and working in Arizona for seven or more days, as well as inform the jurisdiction where he was living of his current residence. *See*, *e.g.*, *Crowder*, 656 F.3d at 876-877 (no constitutional due process concerns for SORNA defendant who claimed lack of knowledge of federal statutory requirements where defendant had, on prior occasions, been notified of and complied with state regulation requirements). There is likewise no constitutional infirmity with SORNA as applied to this defendant, considering the ample notice he was given, on multiple occasions by multiple jurisdictions, that establishing a new residence, even one that was temporary or transient, triggered a registration obligation. He was also on notice that he was to register where he worked. (2-ER-90.)

> b. SORNA Provides Clear Guidance to Law Enforcement Official That Defendant had Violated his Statutory Obligations.

The defendant's claim that he was "subjected to arbitrary and misleading enforcement by various State and Federal agencies" also fails.[13] SORNA's

---

[13] A claim that he "was not allowed to register in Arizona" misconstrues the record. The defendant made no effort to register in the state of Arizona until he was

provisions provide clear standards to law enforcement to preclude any discriminatory enforcement.

Discriminatory enforcement cases are generally those cases where there are no standards and leave police and prosecutors with the discretion to decide whether the law is violated. *See JDT*, 762 F.3d at 996. This Court assesses whether a statute allows arbitrary and discriminatory enforcement based on the vagueness in the text of the statute. *See e.g.*, *Kolender v. Lawson*, 461 U.S. 352, 353 (1983) (state statute that required persons who loiter or wander on streets to provide "credible and reliable" identification and to account for their presence found to be unconstitutionally vague because it had no standard for determining what a suspect had to do to satisfy the requirement of a "credible and reliable" identification, and it

---

on notice that the U.S. Marshals were trying to locate him on June 8, 2020. As of that date, he had been in the state of Arizona for 13 days, not including May 26, 2020, the date of his arrival. The defendant then went to the Pima County Sheriff's Office to register but did not arrive until 5 to 10 minutes prior to closing time. (3-ER-378.) As Ms. Aimee Jacobson-Mielnicki testified, because this was a new registration it would have taken approximately 45 minutes to an hour to complete. (3-ER-378.) Thus the defendant was told to return the next day. (*Id.*) The defendant told Jacobson-Mielnicki that he was leaving the state the next day. (*Id.*) Therefore, Jacobson-Mielnicki gave the defendant a phone number for Detective Harn with the Tucson Police Department, and told him to call Detective Harn "to verify whether he wanted him to register the next day." (3-ER-379.) There was no testimony presented at trial that Jacobson-Mielnicki told the defendant he did not have to register under Arizona law. Furthermore, Jacobson-Mielnicki testified that she would have registered the defendant if he came back and asked her to do so without asking more questions to determine if registration is required. (3-ER-388-389.) Regardless, on June 8, 2020, the defendant was already in violation of SORNA because he had not updated his registration within 3 business days.

was up to the officer to determine if he was satisfied the identification was reliable; thus enforcement was arbitrary); *City of Chicago v. Morales*, 527 U.S. 41 (1999) (finding unconstitutional an ordinance that prohibited "criminal gang members from loitering with one another with other persons in any other place, where loitering was defined as "remaining in any one place with no apparent purpose" as that definition was inherently subjective and afforded too much discretion to the police).

However, SORNA's provisions include sufficient standards for law enforcement to prevent arbitrary enforcement. The only persons subject to the enforcement statute are sex offenders required to register under SORNA; an element to which the defendant stipulated. SORNA clearly gives an offender up to three days to register or update a registration following relocation, or change in employment location. 34 U.S.C. § 20913(c).

Given the narrow class of offenders subject to the statute, the clearly defined timeframe before enforcement may commence, and the facts surrounding the defendant's case, enforcement in this case was consistent with the "core concerns" underlying SORNA - that is ensuring that transient sex offenders do not slip through the cracks. SORNA provides objective, specific guidance to law enforcement officials that offenders who move from one jurisdiction to another are in violation of SORNA beginning three days after they move when they fail to update authorities as to their actual whereabouts. This is a definitive, bright-line rule that does not invite

unbridled discretion or suggest the potential for discriminatory enforcement. *See*, *e.g.*, *United States v. Dimitrov*, 546 F.3d 409, 415 (7th Cir. 2008) (holding that criminal prohibition on unlicensed money transmitting was not unconstitutionally vague because it did not suffer from the chief infirmity of the loitering regulation at issue in *Morales*, "vest[ing] enforcement officials with wide discretion and contain[ing] no objective standards to prevent arbitrary enforcement").

And in fact, SORNA was not arbitrarily enforced as to the defendant. It was undisputed at trial that (1) the defendant was required to register as a sex offender under SORNA; (2) he traveled across state lines from Michigan to Arizona; and (3) after traveling across state lines he remained in Arizona for work and lived in a hotel from May 26, 2020, to June 8, 2020, without having notified either Arizona or Michigan. Thus, the defendant was in violation of SORNA's registration requirements starting on May 29, 2020, and there was probable cause to arrest him. In this case, the actions of the defendant were in clear violation of the statute.

Accordingly, SORNA provides objective standards regarding transient offenders who provide false information about their general whereabouts, sufficient to prevent arbitrary or discriminatory enforcement. Therefore, this Court should find that the language of SORNA provided sufficient guidance to withstand the defendant's vagueness challenge.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the judgment of conviction and sentence should be

affirmed.

GARY M. RESTAINO
United States Attorney
District of Arizona

CHRISTINA M. CABANILLAS
Deputy Appellate Chief


<u>s/ *Shelley K.G. Clemens*</u>

SHELLEY K.G. CLEMENS
Assistant U.S. Attorney

## IX.  <u>STATEMENT OF RELATED CASES</u>

To the knowledge of counsel, there are no related cases currently pending in

this Court.

RLM/ba

## X.   <u>CERTIFICATE OF COMPLIANCE FOR BRIEFS (Form 8)</u>

**9th Cir. Case Number(s):**  21-10316

I am the attorney or self-represented party.

**This brief contains <u>13396</u> words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Shelley K.G. Clemens*      **Date:** *11/04/2022*